But our first case on the docket is U.S. v. Hisey. It's 20-3106 and we'll hear first from Mr. Smith. May it please the court. I'm Grant Smith and I'm representing Mr. Hisey in this case. When considering whether a previous conviction qualifies under 922 G, the maximum amount of prison time that a particular defendant could have received controls. Here, the maximum amount of prison time that Mr. Hisey could have received was no prison time. And I want to stress at the outset that the state sentencing judge had absolutely no discretion in the matter. The court was legally required to impose a non-prison sanction for Mr. Hisey's offense. That should resolve the matter. The maximum amount of prison time was no prison time. Therefore, Mr. Hisey is actually innocent of violating 922 G. Now in its response brief, the government relies on a durational dispositional distinction that it says should guide this court's analysis. But the problem with that distinction is that it fails to realize that 922 G1 contains both a dispositional and a durational component. First, the crime must be punishable by imprisonment. That's the dispositional component. For a term exceeding one year, the durational component. Here, Mr. Hisey's conviction fails at step one. His crime was not punishable by imprisonment. For that reason alone, his 2255 motion was not procedurally barred and it should have been considered on the merits. So the only, excuse me, the only real argument that the state has on this one is, the government has, is that he is punished abo, abo, if he violated the terms of the suspension of the sentence. What do you think about that? Well, I think that concept is directly rejected by both Carachuri-Rosendo and by Brooks. And then it rejects this, any sort of hypotheticals or speculation factoring into the analysis under 922 G. And additionally, I think it's wrong because both those cases also say what you look at is what was known to the state sent, or to the sentencing court at the time of sentencing. And you can't consider any additional facts outside of what was known at that point. Well, you say that those cases directly rejected that, that government's proposition here. Did either of them involve suspended prison time subject to probation? Then how did they directly reject it? It seems like they're different. Well, they directly rejected it by rejecting any sort of hypothetical or speculation factoring into this analysis. But is it hypothetical? The court ordered that if you violate the terms of probation, you're subject to 30 months imprisonment. What's hypothetical about that? And that it was just a threat of imprisonment. There was no possibility that he could be imprisoned for this offense. The hypothetical comes in and that it's the crime plus additional conduct. Well, let me ask you one more question just to see how far you're taking this. If you had the same offender, same offense, everything else, but that person absconded from drug treatment, was revoked, in fact, served 30 months subject to the revoked probation condition, and then possessed a firearm, would you say that person is prosecutable under 922 G1 or not? No. If it was legally impermissible at the time of sentencing for the judge to impose any amount of prison time, then the offense does not qualify under 922 G. Is there a case that says that? No, there's not a case that directly says that. I think the closest that you get is Brooks and that it's the max amount of prison time that a particular defendant could have received. And that alone probably isn't enough. But Brooks goes on to talk about what they look at is what was available at the time of sentencing, not additional facts that develop later. Unless there's any additional questions about Mr. Heisey's actual innocence claim, I'd like to focus for a moment on the prejudice component of the cause and prejudice test. I just have a very brief question, and it's really before you move on to cause of prejudice. On pages 19 and 20 of your brief, I think it may have just been a mistake, but I want to make sure you said the court should remand to the district court with instructions to grant the 2255 motion and vacate his conviction. It sounds a little different than what you just asked us to do, which is to remand consideration of the merits. And I assume that that because this is a frankly different remedy than you asked for in the library. Was this inadvertent? The change in language was inadvertent, but it's really the same result. The merits of Mr. Heisey's petition are conceded at this point. His constitutional violation is that his plea wasn't knowingly and voluntarily. Well, it may be. I mean, we don't, it was precluded based on procedural default or procedurally and a procedural default. And so you're asking us to undo that based on actual innocence. But whether it's academic or not, all we can do is remand for consideration of the merits. Do you agree? Correct. Yes, you're right. Okay. Thanks for clearing it up. And just turning briefly to prejudice, in the Rehave context, after Mr. Heisey's case had come up on appeal, there's been further developments in the law that clarify exactly what he has to show to demonstrate a reasonable probability of a different result. And all he has to show is a colorable argument at the time of the offense that he was not aware of his prohibited status. In other words, he just has to have a defense that he didn't know that his crime was punishable by imprisonment for a term exceeding one year. And he has that here. There's nothing that would have tipped him off that this crime was punishable by any term of imprisonment. Relying on Tignor, where this court presumed that the district court would have told the defendant the maximum permissible sentence, it would assume that the district court here told Mr. Heisey that he could not be sent to prison for his offense. Additionally, in the government's 28J letter, they point out that on the journal entry, Mr. Heisey was informed that he was prohibited from possessing firearms. But that argument only works if Kansas prohibits just people that had been convicted of a felony from possessing firearms. And Kansas law is more expansive than that. You can be prohibited from possessing a firearm if you have a misdemeanor domestic violence offense, if you're a user of a controlled substance, if you've been involuntarily committed for any reason, substance abuse, or mental health. So simply because Mr. Heisey was told that he couldn't possess a firearm would not have made him realize that he had met the statutory definition under 922 G1 with his previous conviction. And that's the only evidence the government really had to that point is simply that he was told he couldn't possess a firearm. Everything else indicates that Mr. Heisey had no knowledge that he was prohibited under federal law or that he had the prohibited status under federal law. That would make him guilty of violating 922 G1. Isn't that academic though, because in order to get to the prejudice prong, you have to satisfy the cause prong. And putting aside, if we were to reject your principal argument for actual innocence, it doesn't vowsly, as Mr. Bagg points out, expressly preclude an argument that invoking this argument would have been futile. And it vowsly, the court, in fact, addressed and rejected an argument under Reed versus Ross that the novelty of the claim would have justified not having presented it on direct appeal. How do you respond to that? Well, that hinges on the presumption that vowsly in some way overruled or abrogated Reed v. Ross. And those two decisions exist in perfect harmony. In Reed v. Ross, they said that the cause standard would be satisfied when you have a longstanding and and then in vowsly, the court comes along and says, they quote that from Reed and say, well, frivolity, if it only means that a claim would have been futile in front of a particular court at a particular time, then you don't meet that Reed example of when cause will be satisfied. In other words, if you just think that the district court is going to reject your claim or say the circuit you're in has rejected your claim, but you don't have that longstanding widespread wall of circuit authority, then you haven't satisfied the cause. And if you look at it, vowsly, did they say if you have a longstanding prevalent practice seems to be that the court, although it sounds frankly counterintuitive to me, basically said exactly what Mr. Magg says in interpreting vowsly. And that is if you have case after case that has rejected an argument seems to be logically that that is a novel argument under Reed v. Ross. But it seems to me that what vowsly, the majority says is, well, if it could have been raised, if it wasn't just so out of the norm that people didn't figure out to make that argument, that's just classic futility. And it seems to me that the court in vowsly was drawing the distinction that Mr. Magg is making. Am I wrong about that? I would push back on that. And then if you look at what the court cites in vowsly, it's a, it's a pre Reed v. Ross decision. And it says, we've already recognized that if a claim is futile to a particular court at a particular time, that doesn't constitute cause. Well, wait a minute. Did you say vowsly was pre Reed versus Ross? No, for that preposition that you're relying on, they cite, they cite Ingle v. Isaac, which is a pre Reed v. Ross decision. So this principle had already existed before Reed, and they just revert back to it and say, yeah, we've recognized that if you have one court that's going to reject your claim or two courts, that doesn't cut it. You have to have a longstanding and widespread wall of circuit authority. And that's what existed here. Rehafe says as much in its dissent that this was a longstanding practice that had impacted thousands of cases. And it accuses the majority opinion of casually overturning. It seems to me that what the Supreme court was getting at in Reed was that we do want lawyers to test the law and to feel and to have an obligation to test the law. And it's only when an argument is really not not credible when it would be fanciful or just left out of court that we're not going to impose an obligation of the lawyer to test the law. Well, I think that's fair, but I think also what it was saying is we don't want appeals filled with claims that have been rejected multiple times by multiple courts for over 30 years. I mean, that would require appellate lawyers to file a supplement that would list every possible claim that could be risen in the chance that a defendant could challenge it in a 2255 motion down the road. And the key principle in Reed was judicial efficiency. And that wouldn't serve any purpose of judicial efficiency. We see that fairly regularly, though. Party will raise an argument and just advise us. We're raising it simply to preserve the argument, which doesn't take much of our time. We know that, in fact, it's been raised, but for the Supreme Court or for on bonk review. Sure. Yeah, I wouldn't say that it takes a lot of your time, but if it is requiring every single defendant to raise this or wave it down the road, and that means every single claim that could possibly impact their conviction. I think it would impact the court's time, and it would be a fairly large supplement that would have to be filed. The fact is that rehab was pretty well recognized as an extraordinary kind of out of left field reversal or precedent, wasn't it? Yes, it was. So if we're just arguing around the. How in the season did you bail you? You froze up against it at the time. Could you could you restate that question? You froze up. Yeah. Can you hear me now? Yes. Oh, oh, I think, though, that it was pretty well decided that rehab was so out of the normal precedent out there that in that case, however, you might define the margins elsewhere, that whether somebody had to raise the rehab argument was really there was so much precedent against it that I don't think the Supreme Court was suggesting that other lawyers would have had to have anticipated that particular argument. I'm sure that I'm sure you support that observation, but do you have any comments about it? I do, and we just echo the sentiment that there might be line drawing in other cases, but this is not the case due to the novelty of rehab. I see my time is up. Well, Karen, because of that technical issue, technological issue, let's give Mr. Smith one additional minute. I would respectfully request to reserve it for rebuttal if that's permissible. You bet. You bet. But let's stop the clock here. And Judge Bell, do you have any additional questions? No, no. Judge Phillips. No, thank you. Okay. Thank you, counsel. We'll hear from Mr. Bagg. Good morning, your honors, and good morning, Mr. Smith. May it please the court. Jared Magg on behalf of the United States. You know, looking at this case, I think we're looking at two tracks here. I think if the court believes that it can resolve this case on actual innocence, then that will resolve the case alone. But the cause and prejudice track as well, I think, is important. And I want to start there because where we left off with Judge Bell's question, I think it's important to remember what the court in Reed was looking at. And a critical component of that decision was the fact that a novel issue is one that, as they termed it, is embryonic or latent, something that is in its infancy. And we know that the Rehafe knowledge issue had been litigated for years. Then Judge Gorsuch's dissent in Gamez-Perez was critical in that analysis and is often cited for the roadmap for challenging the 922G knowledge factor. But what's more critical in the Reed decision is the court, on a very close reading of that decision, was very clear when they stated that the cause factor is going to be more applicable in those instances where retroactive application of an opinion demonstrates the novelty of the argument. And in this case, the court, if it's going to have to address the retroactivity issue with Rehafe. But you've conceded, you conceded under Wolf that it is retroactive. We did. We did. I'm just pointing out. You're not retracting. No. You're not retracting. Okay. No, not at all. We're just, as an officer of the court, I'm required to tell the court what the lay of the land is with respect to retroactivity. My point is, is in Reed v. Ross, you can't simply read that decision to simply say that novelty standing alone is enough. The court plainly stated that the cause issue with respect to novelty is, cannot really be divorced so much from the issue of whether or not the court makes a decision retroactive because that signals to the lower courts how novel the issue was. And I think that, again, as Judge Bacharach, as you talked about in what our position is on Boozley, they appreciated the fact in Boozley that the futility argument and the novelty argument, really, you cannot rely on that under the cause factor alone because this Rehafe knowledge issue was not a novel issue. It was not embryonic. It was not latent. There are dozens of opinions that address it. And so it really falls outside the Reed factors as it stands. Mr. Mack, can I probe that a little bit? You know, pre-Rehafe, if any defendant had raised this on a collateral challenge and it had been rejected in district court and then they sought to appeal under 2255 and asked us for a certificate of appealability, wouldn't it be hard to imagine any judge on our court granting a certificate of appealability in light of the fact that we had not only published 10 circuit precedent rejecting the Rehafe, the eventual Rehafe argument, but unanimity among the circuits, every circuit had rejected it. And so if a COA applicant couldn't even have gotten an appeal to be considered on the merits before us, how is it not a completely novel theory? And how would it be anything other than terribly unfair to say, well, you failed to go through the empty exercise of raising it, even though there was no way you could have even gotten it considered on the merits to be rejected collaterally before the 10th circuit. So a couple of answers to that. Obviously, the court was concerned with counsel abandoning that responsibility to raise those on direct appeal in hopes that they might find some ground on collateral appeal. We know the court has concerns with that in essentially telling counsel, look, you're going to get a second bite at the apple if you just sort of not file on direct appeal what you normally should do. And I would echo what Judge Phillips said. We do commonly see this in gun cases, particularly with the Commerce Clause issue with defendants raising whether or not 922G violates the Commerce Clause. It doesn't cause any harm or cost any time and effort with respect to addressing that issue solely to preserve the needed to do it. And he found the ground to raise the issue, and he was successful. There has to be some procedure. And I think it goes against what the Supreme Court had admonished against is trying to preserve something for collateral review when it is obligated to be raised on direct review. But I would also go back to the issue of novelty. This was not a novel issue. This was something that had been raised since the early 90s. So this wasn't in its embryonic stage. Again, Reed v. Ross really talks about the issue having to be so novel in that context. And by the time that the defendant had an opportunity to raise the knowledge factor here, he already had the roadmap given to him. He simply needed to raise the issue on direct appeal if given the opportunity. And so, you know, from a practical standpoint, counsel really is obligated to raise this at the appropriate time to preserve it because it really undercuts the entire procedure and really undercuts what cause and prejudice stands for, which is it must be reserved for the most novel issues that no one really could foresee under the circumstances. And with respect to the prejudice, you know, I would simply echo the issue with the fact that the court need not reach that if it finds that there's no cause. But let's assume that we get to the prejudice issue. This really goes, I think, part and parcel with the actual innocence. And I know the defense has some concerns about the fact that the lower court had somewhat blended the actual innocence and prejudice questions, but I think they really go hand in hand because the question is what did the defendant know at the time? And was he prejudiced by, you know, not being able to, was there a reasonable probability that he wouldn't have pled guilty if he had known that this particular crime would not carry a punishment greater than 12 months? So what, you know, practically speaking, what does a defendant know when he when he appears in front of the court with a crime like this? Well, he knows, first of all, that he has committed a crime that is a controlled substances crime. He knows that this particular crime can carry a sentence of 30 months. Where it turns is whether or not he fits into a category of individuals after he already knows that he has committed a drug crime and that this carries a term of imprisonment, whether or not he can demonstrate a significant substance abuse problem. So that's the dispositional term that has to be met here. So just taking out whether or not he can qualify for those factors, the defendant would absolutely have been subject to a prison term of at least 28 to 32 months. We know that. There's really no dispute about that. It simply turns on whether or not he could demonstrate to the court that he had a substance abuse problem that put him into Senate Bill 123. Well, let me test that, Mr. Begg. Do you really mean that? Because I don't know that that's really the reality. It seems to me that the question is whether or not Mr. Heise, if he had known that the government had the burden to prove beyond a reasonable doubt that he knew that this drug possession crime had been punishable by over a year in prison. And that question of knowledge, of scienter, turns on a very complex issue involving the intermixing of Kansas law that makes this dispositional treatment in lieu of incarceration into a very significant nuanced issue of whether or not he knew that that defense had been punishable by over a year in prison because of the complexities that arise by virtue of Mr. Smith's issue on actual innocence. That seems to be an awfully complex issue for a defense for a defendant to have anticipated and to presume that he or she would have pleaded guilty anyway. I don't disagree. I understand that the complexities of what he is told at the sentencing phase, and if in fact that is the court's position at the end of the day, the government understands that it has a much harder argument to make here if the court finds that dispositional outcomes control. Obviously, we are hanging our hat on the durational side of this argument, that the simple fact that he is told, you are subject to a 30-month sentence. However, I am going to grant you probation because you meet this criteria. He doesn't come in and is told, you know, look, I'm not even going to talk to you about the 30 months because it's not applicable here. Again, this isn't a situation where the defendant's potential sentence of 30 months is hypothetical or theoretical in any way. There has to be a standard set, and the journal entry is clear that says you are going to prison for 30 months. However, dispositionally, I believe you meet these factors, so I am not going to sentence you to 30 months imprisonment. I am going to send you to drug treatment. Do you think, do you agree with Mr. Smith that under the, I forget the name of it, Kansas Court of Appeals decision? Swayze. Swayze, that that is mandatory? Oh yeah, no, we're not disputing that issue. All right, and if hypothetically that we were to say that if punishable by over a year in prison means whether or not Mr. Heise could have been imprisoned for over a year for his drug possession crime, do you concede that you lose on actual innocence? Well, I guess as I understand, yeah, as I understand your question, that practically speaking at the time of sentence he could not have been sentenced to anything but that, I agree. Again, that we are hanging our hat on the fact that he is told that his durational sentence is 30 months. I don't disagree with that. I will have to concede that very point, and I think hopefully we've made that clear enough that at the end of the day this durational dispositional distinction is critical in the government's position because it really would force every court who is dealing with a 922g to look and dig into what the defendant knew at the time when in fact in Kansas cases the defendant's process is you are looking at a term of imprisonment however we are going to give you this instead because you meet this criteria. So it all really turns on the interpretation of Brooks, right? Yeah, exactly, because Brooks of course, you know, talks about the hypothetical defendant. There's nothing hypothetical about this defendant. The only thing that you could say that is theoretically impossible was the fact that because once the judge makes the determination that he does qualify under the criteria of Senate Bill 123 that he is not going to prison, but that entails a series of steps that he had that the court has to engage in to meet that. That never sort of absolves the fact that he is going to be and always was subject to a 30-month or at least a 28 to 32-month term of imprisonment. There were just factors that have to be met. This is wholly different. You know, it seems to me that when we ask what the defendant knew he was vulnerable toward or what he was susceptible of, you have to look at it at the time that he was going to trial in the state court or pleading in the state court because you can't look at the initial charge alone because that's a moving target. I mean, often prosecutors overcharge and then they drop claims, they amend them, and so you can't say did he know at the very beginning he was subject to imprisonment over a year. I guess you have to ask, did he know at the time of disposition of the state trial that he was not subject to imprisonment for more than a year? You know, you can get the government agreeing to a reduced charge that would would solve that and that was all the, you have to look at all the information he had at the time the state court case was resolved. How I would answer that, Judge Bell, is the fact that he knew he was subject to a term of imprisonment but he was not going to be sentenced to prison because he met the criteria of Senate Bill 123, so he knew two different things. No, no, but he knew he personally was not susceptible to the to the sentence because at that time he knew he was so he personally was not subject to that. Other defendants might have been but not him. I can't disagree with that but at the end of the day his knowledge was and he understood that the crime for which he committed would have been would subject him to a term of imprisonment but for the dispositional reasons behind him qualifying for Senate Bill 123 and if this court finds that that would not win this argument because but at the end of the day we believe that the durational argument is the one that wins the day. I see that I'm over time unless the court has questions I would thank the court for its consideration. Whoops, I was on mute. Judge Bell, do you have any additional questions? No. Judge Phillips, do you? None, thank you. Okay, thank you. Mr. Smith, you have one minute for rebuttal. I want to focus on the Kansas sentencing guidelines in this case because when you're charged and when you plead guilty in Kansas all you're advised of is your offense severity level so only one piece of the picture is filled in. All they know is there's this full range in this case it would have been 42 months to 10 months where they could be sentenced and then the and that under Brooks is the maximum permissible sentence that the court looks to for 922g. That's no different than these additional findings which require a non-prison sanction. The court makes the criminal history category score calculation and then it determines whether or not they qualify whether they have a high enough substance abuse risk and then they're charged. Thank you, your honor. Thank you. Judge Bell, do you have any additional questions? No. Or Judge Phillips? None, thank you. Okay, thank you both counsel, Mr. Smith and Mr. Magg. It was the briefing and the advocacy today as we're accustomed to from both of you is excellent. We thank you both for your excellent work. Thank you. This matter will be submitted.